UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICHARD RENE BRUNELLE,<br><br>    Plaintiff,<br><br>v.<br><br>COCO'S ITALIAN MARKET et al.,<br><br>    Defendants. | Case No. 3:20-cv-00982<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

    This employment discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, arises out of pro se Plaintiff Richard Rene Brunelle's employment as a server at Defendant Coco's Italian Market in Nashville, Tennessee, which is owned by Defendant Charles Cinelli. (Doc. No. 6.) Brunelle alleges that he experienced discrimination based on his sexual orientation, was retaliated against for complaining about that discrimination, and ultimately was fired as a server. (*Id.*) The defendants have filed a motion for summary judgment (Doc. No. 30) supported by a memorandum of law (Doc. No. 30-2), a statement of undisputed material facts (Doc. No. 30-1), affidavits (Doc. No. 30-3), and exhibits (Doc. No. 30-4). Brunelle has responded in opposition to the defendants' statement of undisputed material facts (Doc. No. 33), but has not filed any other materials for the Court's consideration. The defendants have filed a reply. (Doc. No. 34.) For the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motion for summary judgment.

## I.     Background

### A.     Factual Background[1]

Brunelle was hired as a server at Coco's Italian Market on October 18, 2016. (Doc. No. 30-1.) Cinelli states in his summary judgment affidavit that Brunelle "was constantly argumentative, overly aggressive[,] and demeaning to other employees" during his employment. (Doc. No. 30-3, PageID# 115, ¶ 4.) Cinelli's assessment is corroborated by an affidavit from General Manager Ali Alujaili, who states that "Brunelle had multiple complaints by other employees, customer, and managers during his employment with Coco's Italian Market." (*Id.* at PageID# 111, ¶ 4.) "On September 14, 2017, [ ] Brunelle received a disciplinary action and final notice stemming from leaving work without notifying management or signing out." (*Id.* at PageID# 115, ¶ 5.) The record contains a "notice of disciplinary action" directed to Brunelle from manager Jeffrey Roscoe stating that Brunelle engaged in "[i]nsubordination" on September 14, 2017, by "le[aving] at 5:57[pm] w[ith]out having any signature on paperwork . . . ." (Doc. No. 30-4, PageID# 117.) The notice states that it is a "final notice[.]" (*Id.*) A field labeled "expected improvement" contains unattributed writing that states: "Will make sure befor[e] leaving it is ok with manager on [d]uty. Will not leave w[ith]out sign[a]ture by manager on [d]uty signing cash sheet unless otherwise instructed." (*Id.*) The notice form includes spaces for an employee's statement and signature, but those fields are blank.[2] (*Id.*)

---

[1]     The facts in this section are drawn from the defendants' statement of undisputed material facts (Doc. No. 30-1), affidavits (Doc. No. 30-3), and exhibits (Doc. No. 30-4), and from a letter to Brunelle from the United States Equal Employment Opportunity Commission that Brunelle attached to his original complaint (Doc. No. 1-2).

[2]     Brunelle's response in opposition to the defendants' statement of undisputed material facts states that he "did not receive a disciplinary action and final notice on September 14, 2017." (Doc. No. 33, PageID# 99, ¶ 5.) That statement is not supported by other record evidence or provided in

2

On January 8, 2018, a customer contacted Coco's Italian Market to complain about an interaction with Brunelle. (Doc. Nos. 30-1, 30-3.) The customer stated that he, his wife, and another couple had dinner at the market and that "[a]ll went pretty well until it was time to pay the ticket." (Doc. No. 30-4, PageID# 118.) "[T]he ticket was $38.18[,]" the customer gave Brunelle "$43.00 in cash making it a $4.82 tip[,]" and told Brunelle that he "didn't need change." (*Id.*) After a few minutes, Brunelle returned with the customer's money and said, "Did you not like me very well?" (*Id.*) The customer "thought maybe [he] had miscounted [the] money and looked at it once again[,]" confirming that he "had in fact handed [Brunelle] $43.00 for a $38.18 ticket." (*Id.*) "When [Brunelle] came back to pick [the] money up once more, [the customer] counted it out to him and [Brunelle] told [the customer] [that] if [he] was happy with that amount then that was fine[.]" (*Id.*) The customer complained that he "ha[d] never had an experience like this anywhere[,]" that Brunelle's behavior "was very rude" "and a large black eye on [the] establishment[,]" and stated that he "w[ould] not be back and w[ould] tell others how [they] were treated . . . ." (*Id.*) Brunelle was suspended after this incident.[3] (Doc. Nos. 30-1, 30-3.)

Jo-Leah Tilbury worked as a manager at Coco's Italian Market from 2017 until December 2021. (Doc. No. 30-3.) Tilbury states by affidavit that "Brunelle was often aggressive towards managers and other employees including yelling, cursing, and invading their personal space to intimidate them." (*Id.* at PageID# 113, ¶ 4.) She further states that she "witnessed numerous instances of . . . Brunelle[ ] causing disputes and confrontations between employees." (*Id.* at ¶ 3.) For example, in May 2018, a food runner named Eloise was unable to help Brunelle

---

a form that can be considered as evidence at summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A); M.D. Tenn. R. 56.01(c) (response to statement of facts).

[3] Brunelle does not dispute that he was suspended on January 8, 2018, for confronting a customer about a tip he received. (Doc. No. 33.)

3

stack dishes and Brunelle told her "that he would 'remember that in her tip out[.]'" (Doc. No. 30-1, PageID# 73, ¶ 7 (citing Doc. No. 30-3).) Eloise approached Alujaili about the incident, but "Brunelle interjected and began yelling at Eloise. Eloise quit her job immediately due to the confrontation" and "Brunelle 'celebrated [her] resignation by stating, 'another one bites the dust.'"[4] (*Id.*) "Tilbury requested a discussion with [ ] Brunelle related to the incident . . . and [ ] Brunelle accused [Tilbury] of harassing him."[5] (*Id.* at ¶ 8 (citing Doc. No. 30-3).) "On May 31, 2018, [ ] Brunelle and another employee, Sam, left work without first receiving managerial approval."[6] (*Id.* at ¶ 9 (citing Doc. No. 30-3).)

The defendants assert that Tilbury terminated Brunelle's employment on June 8, 2018, "for inappropriate workplace behavior." (*Id.* at ¶ 10 (citing Doc. No. 30-3).) The record contains a "[s]eparation [n]otice" signed by Tilbury stating that Brunelle's last day of work was June 8, 2018, that the separation was "involuntary[,]" and that the reason for the separation was "inappropriate workplace behavior[.]" (Doc. No. 30-4, PageID# 119.) Tilbury signed the separation notice. (*Id.*) A space at the bottom of the notice labeled "employee signature" is blank.[7] (*Id.*)

---

[4]   Brunelle does not dispute that he told Eloise he would "remember that in her tip out[.]" (Doc. No. 33, PageID# 99, ¶ 7.) Brunelle states that he disputes the remainder of the defendants' assertions about this event (*id.* at PageID# 99–100, ¶ 7), but offers no evidence to support his assertion that these facts are disputed.

[5]   Brunelle's disputes that Tilbury requested a discussion with him and that he accused her of harassment (Doc. No. 33), but offers no evidence to support that position.

[6]   Brunelle states that he "never left work without first receiving managerial approval with another employee" (Doc. No. 33, PageID# 100, ¶ 9) but offers no evidence to support that position.

[7]   Brunelle does not dispute that he was terminated on June 8, 2018. (Doc. No. 33.) He disputes that he was fired for inappropriate workplace behavior, stating that "he was informed that there was no reason for the termination." (*Id.* at PageID# 101, ¶ 10.) Again, Brunelle offers no evidence to support that position.

Cinelli states that, "[d]ue to [ ] Brunelle's behavior following his termination, [ ] Cinelli was forced to hire an attorney and have a cease-and-desist letter sent to [ ] Brunelle." (Doc. No. 30-1, PageID# 101, ¶ 11 (citing Doc. No. 30-3).) The record contains a letter to Brunelle from an attorney stating that the attorney "ha[d] been retained by Chuck Cinelli regarding the events subsequent to [Brunelle's] termination of employment" and informing Brunelle that he was "**prohibited** from entering any of [ ] Cinelli's properties" and "advised . . . to **cease and desist** any and all contact with [ ] Cinelli, his family, and [his] businesses." (Doc. No. 30-4, PageID# 120.)

Brunelle filed a charge against Coco's Italian Market with the United States Equal Employment Opportunity Commission (EEOC) alleging that he was "subjected to numerous sexual comments and text messages that created a hostile working environment [during his employment at Coco's,]" that he "complained but the harassment continued[,]" and that, "[a]fter complaining of discrimination, . . . [he] w[as] discharged and not given a reason." (Doc. No. 1-2, PageID# 10.) Brunelle submitted recordings to the EEOC in support of his charge. (Doc. No. 1-2.) On August 19, 2020, the EEOC sent Brunelle a letter enclosing a notice of right to sue.

B.     **Procedural History**

Brunelle initiated this action by filing a complaint against Coco's Italian Market and Cinelli. (Doc. No. 1.) The Court found that Brunelle's complaint could be dismissed sua sponte under Federal Rule of Civil Procedure 12(b)(1) because it was "essentially devoid of factual allegations" and therefore "wholly speculative." (Doc. No. 5, PageID# 15, 16.) However, the Court provided Brunelle "an opportunity to supply the missing factual allegations" and ordered him to "submit an amended complaint that provides all relevant factual allegations in support of [his] stated claims." (*Id.* at PageID# 16.)

Brunelle filed an amended complaint, which is the operative pleading in this action. (Doc. No. 6.) The amended complaint alleges that Brunelle "encountered . . . sexual discrimination, displays of homophobia, and harassment from . . . employees and night/kitchen manager, Jeff Roscoe" while working at Coco's Italian Market. (*Id.* at PageID# 23.) Brunelle alleges that he reported the harassment and discrimination to Alujaili and "to the office administrator Carol, who acted as HR" and "requested paperwork multiple times" regarding his complaints "but never received any from Carol or Al[ujaili]." (*Id.*) Brunelle further alleges that Tilbury was initially "flirty towards" him when she was hired in late 2017 but, after she "found out [Brunelle] was gay, her attitude changed . . . [and] she started treating [him] in a negative homophobic way," including calling him names and "sending [him] an inappropriate picture." (*Id.* at PageID# 24.) Brunelle states that he spoke to Alujaili about Tilbury's behavior, but Alujaili "did not take [Brunelle's] concerns seriously." (*Id.*) Brunelle also spoke to Carol, who "informed [him] that Al[ujaili] ha[d] recorded all [his] complaints and would provide [him] with these documents." (*Id.*) Brunelle "never received any of [his] recorded complaints from Al[ujaili]." (*Id.*) Brunelle states that, sometime around March 2018, he "made a sexual harassment complaint that led to a meeting with Human Resources" but that "the sexual harassment continued" "[a]fter this meeting . . . ." (*Id.* at PageID# 21.) Brunelle alleges that Tilbury was "promoted to be [his] superior" and "continued to harass [him], task [him] with extra duties and extra scrutiny[,]" and "manipulate[] [his] schedule . . . [to] g[i]ve some of [his] shifts to a fellow server, who had recently become a tenant of hers[.]" (*Id.* at PageID# 24.) He further alleges that he "attempted to contact" Cinelli "in May 2018 because nothing was being done" about his complaints, but his attempt "fell on deaf ears." (*Id.*) The amended complaint asserts claims for discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, but does state what relief Brunelle seeks. (Doc.

No. 6.) The Court found that Brunelle had "filed an amended complaint that include[d] factual allegations" and referred this action to the Magistrate Judge for case management under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 7, PageID# 25.)

The defendants moved for summary judgment (Doc. No. 30) and filed a supporting memorandum of law (Doc. No. 30-2), statement of undisputed material facts (Doc. No. 30-1), affidavits from Alujaili, Tilbury, and Cinelli (Doc. No. 30-3), and accompanying exhibits (Doc. No. 30-4). The defendants argue that they are entitled to summary judgment on Brunelle's discrimination claim because there is no record evidence to support a finding that any similarly situated heterosexual employees were treated more favorably than Brunelle and he therefore cannot establish a prima facie case of discrimination. (Doc. No. 30-2.) They further argue that, even if Brunelle could establish prima facie discrimination or retaliation claims based on record evidence, they had a legitimate, nondiscriminatory reason for firing him—specifically, his "disciplinary record and treatment of other employees . . . ." (*Id.* at PageID# 81.) The defendants also argue that there is insufficient record evidence to support Brunelle's hostile work environment claim. (Doc. No. 30-2.)

Brunelle filed a response in opposition to the defendants' statement of undisputed material facts. (Doc. No. 33.) In a short paragraph at the beginning of his response, Brunelle argues that his "gender discrimination" claim "does not fail" because he "experienced harassment from . . . Tilbury, which was brought to the attention of the managers, [Tilbury] was not disciplined, nor fired but was promoted and able to terminate [Brunelle]." (*Id.* at PageID# 97.) He further argues that he "did suffer severe harassment due to his sexual orientation" and "these incidents were documented on numerous occas[ ]ions." (*Id.*) Brunelle did not sign his response under penalty of perjury. His specific responses to the defendants' statements of undisputed material facts do not

include any citations to record evidence, and Brunelle has not filed any other materials in response to the defendants' motion for summary judgment.

The defendants filed a reply, arguing that Brunelle has not "provide[d] the Court with any tangible evidence" supporting his opposition to their motion for summary judgment and that their motion therefore "stands unopposed and must . . . be granted." (Doc. No. 34, PageID# 105.) The defendants also reiterate their arguments in support of summary judgment, emphasizing that Brunelle has not presented any evidence to establish a prima facia case of discrimination, rebut their asserted nondiscriminatory reason for firing him, or establish the existence of a hostile work environment. (Doc. No. 34.)

**II.     Legal Standard**

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698

F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

**III.    Analysis**

    **A.    Local Rule 56.01 and the Defendants' Initial Burden Under Federal Rule of Civil Procedure 56**

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the

fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Pro se parties are not excused from complying with these rules. *See* M.D. Tenn. R. 56.01(b)–(c). Indeed, the Court's scheduling order in this action instructed the parties to "refer to Federal Rule of Civil Procedure 56 and Local Rule 56.01 for summary judgment procedures[,]" described Local Rule 56.01's requirements, and warned the parties that "[f]ailure to respond in opposition to a statement of material fact may result in the Court assuming that the fact is true for purposes of summary judgment." (Doc. No. 17, PageID# 51); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) ("If a timely response to a moving party's statement of material facts . . . is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.").

The defendants filed a statement of undisputed material facts that complies with the requirements of Local Rule 56.01(b) and includes citations to Cinelli's, Tilbury's, and Alujaili's affidavits and accompanying exhibits. (Doc. No. 30-1.) Brunelle responded to the defendants' statement of undisputed material facts (Doc. No. 33), but his response does not include any citations to the record to support his position that certain facts are disputed. Brunelle did not file a response to the defendants' supporting memorandum of law or any other materials.

The defendants argue that Brunelle's failure to present any evidence in opposition to their summary judgment motion requires the Court to grant their motion as unopposed. (Doc. No. 34.) While the defendants are correct that Local Rule 56.01(f) requires the Court to take an asserted undisputed fact to which no adequate response has been given as true, the conclusion that summary judgment is therefore warranted does not automatically follow. Brunelle's failure to support his

response to the defendants' statement of undisputed facts with record citations and to respond to their supporting memorandum of law does not lessen the defendants' initial burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (2022). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022) ("If the movant

fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that the defendants have offered in support of their motion to determine if it is sufficient to satisfy their initial summary judgment burden with respect to each of Brunelle's claims before evaluating Brunelle's response in opposition to the defendants' summary judgment arguments and evidence. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)); *see also Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (holding that defendant "did not carry its initial burden of production" where evidence it produced in support of motion for summary judgment "purport[ed] to negate an essential element of plaintiffs' claim—timely notice—but . . . d[id] not actually do so"). Under Rule 56(c)(3), the Court may also look to other materials in the record in its review. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

### B. Brunelle's Title VII Claims

Title VII prohibits employers from discharging or otherwise discriminating against any employee with respect to the compensation, terms, conditions, or privileges of his employment because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). It also prohibits employers from discriminating against any employee in retaliation for opposing such discrimination. *Id.* § 2000e-3(a). Title VII's prohibition on sex-based discrimination encompasses

discrimination based on an individual's sexual orientation. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741–43, 1754 (2020).

To prevail on a Title VII claim, a plaintiff must present either direct or circumstantial evidence of discrimination or retaliation. *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) (discrimination and retaliation claims); *Barrett*, 556 F.3d at 514 (hostile work environment claims). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful [discrimination or] retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). Because Brunelle has not alleged any direct evidence of discrimination, the Court must evaluate his Title VII claims under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rogers*, 897 F.3d at 771; *Imwalle*, 515 F.3d at 544; *Barrett*, 556 F.3d at 515. Under the *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence must first make out a prima facie case of discrimination, retaliation, or hostile work environment. *Rogers*, 897 F.3d at 772; *Barrett*, 556 F.3d at 515. If he does so, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory [or nonretaliatory] reason for its decision." *Rogers*, 897 F.3d at 772 (alteration in original) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009)). If the employer meets its burden, "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* (quoting *Upshaw*, 576 F.3d at 584).

1. **Discrimination**

To establish a prima facie case of discrimination based on sex, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for his position; and (4) he was treated less favorably than someone outside the protected class who was similarly situated. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir.

2010). To carry their initial burden at summary judgment, the defendants must show the absence of a genuine issue of material fact that negates at least one of these elements. The defendants argue that there is no genuine issue of material fact as to the fourth element and that there is no evidence in the record from which a reasonable jury could find that any similarly situated individual outside of Brunelle's protected class was treated more favorably than Brunelle. (Doc. No. 30-2.)

The defendants assert in their statement of undisputed material facts that "[h]eterosexual servers and managers were not treated any differently from [ ] Brunelle." (Doc. No. 30-1, PageID# 74, ¶ 12 (citing Doc. No. 30-3).) They offer the example of "a heterosexual server, Robert Landers, [who] was terminated for confronting a customer about the amount of server tip after a meal when [ ] Brunelle was only suspended for a similar act." (*Id.* at ¶ 13 (citing Doc. No. 30-3).) The defendants also state that "additional heterosexual servers and managers terminated near the time of [ ] Brunelle's termination include Jarrod Johnson (business performance issues), Chrystal Bernstein (not appearing for scheduled shift), Lisa Bell (inappropriate handling of funds), Alisa Aytes (staying late to drink at work), and Amara Charbonneau (missing shifts)." (*Id.* at ¶ 14 (citing Doc. No. 30-3).)

Brunelle's response to the defendants' statement of undisputed material facts generally disagrees with the defendants' assertion that heterosexual servers and managers were not treated more favorably than he was. (Doc. No. 33.) Brunelle disputes the asserted reason for Landers's termination, stating that Landers "was terminated for changing a tip." (*Id.* at PageID# 101, ¶ 13). Regarding the defendants' examples of Johnson, Bernstein, Bell, Aytes, and Charbonneau, Brunelle states that he "neither disputes nor undisputed [sic] this fact, he does not know why the[se] . . . employees were terminated, they are unrelated." (*Id.* at PageID# 102, ¶ 14.)

Rule 56(c) requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Brunelle has not done so here. Brunelle includes no record citations with his responses, and he has not filed any evidence that can be considered at summary judgment to support his assertions. Brunelle's unsupported statements are not sufficient to create a genuine dispute of material fact that he was treated less favorably than any similarly situated individual who was not a part of his protected class.

Even if Brunelle could establish a prima facie case of sex discrimination under Title VII based on the record evidence, the defendants have articulated a legitimate nondiscriminatory reason for terminating Brunelle's employment that is supported by undisputed record evidence— Brunelle's disciplinary record and treatment of other employees. The defendants assert in their statement of undisputed material fact that Brunelle received a disciplinary action in September 2017 for leaving work early without permission, that Brunelle was suspended in January 2018 after a customer whom Brunelle confronted about a tip complained, and that Brunelle again left work early without permission in May 2018. (Doc. No. 30-1.) The defendants filed a copy of the notice of disciplinary action and of the customer's complaint with their summary judgment motion. (Doc. No. 30-4.) The defendants further assert that "Brunelle was often aggressive towards managers and other employees including yelling, cursing, and invading their personal space to intimidate them" and "had multiple complaints by other employees, customers, and managers during his employment with Coco's Italian Market." (Doc. No. 30-1, PageID# 71– 72, ¶¶ 2, 4 (citing Doc. No. 30-3).) Those assertions are supported by affidavits from Tilbury and

15

Case 3:20-cv-00982   Document 35   Filed 09/15/22   Page 15 of 20 PageID #: 135

Alujaili and are not contradicted by any record evidence. The defendants have therefore established that there is no genuine issue of material fact at summary judgment that they terminated Brunelle's employment for a legitimate, nondiscriminatory reason. *See Rogers*, 897 F.3d at 777.

Brunelle bears the burden to show a question of fact that the defendants' proffered reason was actually a pretext for discrimination. *See id.* To meet this burden, Brunelle must produce evidence sufficient for a reasonable jury to find "'that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Id.* (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)). Brunelle has not provided any evidence sufficient to create a question of fact that the defendants' asserted reason for firing Brunelle was actually pretext for discrimination. Brunelle does not dispute that he was suspended in January 2018 for confronting a customer about a tip. (Doc. No. 33.) While Brunelle states that he disputes that he received a disciplinary notice in September 2017 and generally disputes the defendants' assertions about his workplace behavior (*id.*), Brunelle's conclusory, unsworn, and unsupported statements are insufficient to create a genuine issue of material fact sufficient to defeat the defendants' motion.

The defendants are therefore entitled to summary judgment on Brunelle's Title VII discrimination claim.

## 2. Retaliation

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity under Title VII; (2) the employer knew about his exercise of protected rights; (3) the employer subsequently took an adverse employment action against him; and (4) there was a causal connection between the adverse employment action and the protected activity. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

The defendants have identified specific record evidence that Brunelle never reported experiencing sexual harassment or discrimination and that, even if he had done so, the defendants were not aware of those reports. (Doc. Nos. 30-1, 30-2.) Specifically, the defendants assert in their statement of undisputed material facts that Brunelle never "complain[ed] of sexual harassment or discrimination" to Cinelli, Alujaili, or Tilbury, and that Cinelli, Alujaili, and Tilbury "[n]ever hear[d] of anyone sexually harassing or discriminating against [ ] Brunelle." (Doc. No. 30-1, PageID# 75, ¶¶ 16, 17; *see also* Doc. No. 30-2 ("At no point during his employment did [d]efendants' owner, general manager or manager ever hear of anyone sexually harassing or discriminating against [ ] Brunelle. At no point during his employment did [ ] Brunelle complain of sexual harassment or discrimination [to] Defendants' owner, general manager, or manager." (citing Doc. No. 30-1)).) The evidence that supports these statements—which is not contradicted by other evidence in this record—is sufficient to establish that Brunelle cannot prevail on the second element of his retaliation claim.[8]

Further, even if Brunelle could establish a prima facie case of retaliation based on the record evidence, the defendants have proffered a legitimate, nondiscriminatory reason for terminating Brunelle's employment that is supported by record evidence, as explained above. To prevail on a retaliation claim "where the defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must prove not only that the defendant's

---

[8] The EEOC letter that Brunelle attached to his original complaint states that "[o]ne of the recordings [Brunelle] provided [to the EEOC] . . . established that [Brunelle] complained of discrimination during the fall and was not discharged until the following summer." (Doc. No. 1-2, PageID# 10.) Even construed in the light most favorable to Brunelle, this evidence does not identify to whom Brunelle complained or speak to whether the defendants had knowledge of that complaint. Moreover, the letter, by itself, is insufficient evidence to create a genuine dispute of material fact that the defendants were aware of any complaints of sexual harassment or discrimination made by Brunelle.

proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation." *Imwalle*, 515 F.3d at 544. Brunelle has not presented any contrary evidence that can be considered at summary judgment to create a question of fact as to whether the defendants' stated reason for terminating his employment—Brunelle's disciplinary record and treatment of other employees—was a pretext for retaliation.

The defendants are therefore entitled to summary judgment on Brunelle's Title VII retaliation claim.

### 3. Hostile Work Environment

"Title VII offers employees protection from a 'workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" *Barrett*, 556 F.3d at 514 (alterations in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish a prima facie case of a sexually hostile work environment, a plaintiff must demonstrate that: (1) he was a member of a protected class; (2) he was subject to unwelcome sexual harassment; (2) the harassment was sex based; (3) the harassment unreasonably interfered with his work performance by creating an environment that was intimidating, hostile, or offensive; and (5) there is some basis for employer liability. *See Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).

The defendants argue that, instead of establishing that Brunelle experienced a hostile work environment, the record evidence shows that Brunelle harassed others during his employment and that this harassment formed part of the basis for Brunelle's termination. (Doc. Nos. 30-2, 34.) Although Brunelle alleges in his amended complaint that he experienced unwelcome sexual conduct, he has not offered any evidence at summary judgment to support that allegation. Brunelle's amended complaint is not signed under penalty of perjury, and its allegations alone thus

cannot satisfy his burden to respond to the defendants' well-supported motion for summary judgment. *See King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (holding that "'a verified complaint . . . satisfies the burden of the nonmovant to respond' to a motion for summary judgment, unlike 'mere allegations or denials' in unverified pleadings" (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc))); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a complaint signed "under penalty of perjury . . . carries the same weight as would an affidavit for the purposes of summary judgment"). Brunelle has not presented any evidence beyond the pleadings to support his Title VII hostile work environment claim. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2721 (4th ed. updated Apr. 2022) ("The importance of going beyond the pleadings on a summary-judgment motion is emphasized by the requirement in 56(c)(1) that a party either asserting that a fact cannot be or that it is genuinely disputed 'must' support that assertion by citation to materials in the record."). The defendants are entitled to summary judgment on that claim as well.

### IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motion for summary judgment (Doc. No. 30) be GRANTED and that judgment be entered in their favor.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 15th day of September, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge